**Docket No. 2015-1509**

*In the*

# United States Court of Appeals

*for the*

# Federal Circuit

JBLU, INC.,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Appellee.*

*Appeal from the United States Court of International Trade in Case No. 1:12-cv-00042-NT · Senior Judge Nicholas Tsoucalas*

# REPLY BRIEF OF APPELLANT JBLU, INC.

ELON A. POLLACK, ESQ.
MATTHEW R. LEVITON, ESQ.
STEIN SHOSTAK SHOSTAK
POLLACK & O'HARA, LLP
865 South Figueroa Street, Suite 1388
Los Angeles, California 90017
(213) 630-8888 Telephone
(213) 630-8890 Facsimile

*Attorneys for Plaintiff-Appellant, JBLU, Inc.*

September 21, 2015

COUNSEL PRESS · (800) 3-APPEAL PRINTED ON RECYCLED PAPER 

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

*JBLU, Inc. v. United States*

**CASE NO. 2015-1509**

**CERTIFICATE OF INTEREST**

Counsel for Plaintiff-Appellant JBLU, Inc. certify the following:

1. The full name of every party or amicus represented by us is:

   JBLU, Inc.

2. The name of the real party in interest if the party named in the caption is not the real party in interest is:

   Not Applicable.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us are:

   None.

4. The names of all the law firms and the partners and associates that have appeared for the party in the lower tribunal or are expected to appear for the party in this Court:

   STEIN SHOSTAK SHOSTAK POLLACK & O'HARA LLP

   Elon A. Pollack
   Matthew R. Leviton
   Mandy Ann Edwards

Dated: September 21, 2015

/s/ Matthew R. Leviton
By: Elon A. Pollack, Esq.
Matthew R. Leviton, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 4

CONCLUSION .......... 13

CERTIFICATE OF SERVICE .......... 14

CERTIFICATE OF COMPLIANCE .......... 15

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Amerijet Int'l, Inc. v. Pistole*,
753 F.3d 1343 (D.C. Cir. 2014)....................8

*Barnett v. Weinberger*,
818 F.2d 953 (D.C. Cir. 1987)....................8

*Motor Vehicle Mfrs. Ass'n., Inc. v. State Farm Mut. Auto Ins. Co.*,
463 U.S. 29 (1983)....................8, 9

*Volkwagenwerk Aktiengesellschaft v. Federal Maritime Commission*,
390 U.S. 261 (1968)....................8

## STATUTES

19 U.S.C. § 1304 (2010) .................... *passim*

## REGULATIONS

19 C.F.R. § 134.46 .................... *passim*
19 C.F.R. § 134.47 .................... *passim*

## OTHER AUTHORITIES

Customs Ruling HQ H137556 (June 13, 2011)....................6, 12, 13
Customs Ruling HQ 731707 (July 26, 1989) ....................7, 12

## INTRODUCTION

Appellant JBLU imported women's jeans displaying its trademarks between September 11, 2010 and October 13, 2010. On October 7, 2010, JBLU filed an application with the USPTO to register its trademarks "C'est Toi Jeans USA" and "CT Jeans USA." After filing the application, Appellee U.S. Customs and Border Protection ("Customs") concluded that JBLU's jeans satisfied the statutory "conspicuously marked" requirement, which, presumptively, indicated that the jeans were not potentially confusing under the statute. Customs, however, concluded that the jeans entered before JBLU filed the trademark applications did not satisfy the country of origin marking requirements, which, in turn, indicated that the jeans were potentially confusing under the statute. Nothing changed from one day to the next other than JBLU's filing of its application for registration with the USPTO.

Customs' interpretation of 19 C.F.R. § 134.47 is unreasonable because the presence of a "pending" trademark has no bearing on consumer confusion under 19 U.S.C. § 1304. Consumer confusion is not eliminated by applying for a trademark, but through requiring conspicuous country of origin markings on the merchandise. *See id.* That requirement is satisfied in this case. Customs, however, unreasonably relies on the distinction between a pending and non-pending trademark application to determine whether JBLU has satisfied the country of origin marking requirements under § 1304.

There is no practical difference between a mark that is pending before the USPTO and a mark that has been used in commerce for several years. The only difference is whether the importer has satisfied a technicality (filing an application with the USPTO) that Customs unreasonably deems significant but in reality does not affect consumer confusion one way or the other. Filing an application with the USPTO involves (1) identifying the mark; (2) identifying the claimant; and (3) if applicable, date of first use in commerce. These filing requirements have no bearing on potential consumer confusion under the country of origin marking statute. *See* 19 U.S.C. § 1304. Customs, moreover, does not impose similar filing requirements for other types of qualifying markings under the regulation (*i.e.*, trade names and souvenir markings), which causes confusion among importers and produces a regulatory scheme that is difficult to navigate. *See* § 134.47.

In its Response Brief, the Government attempts to substitute its own *post hoc* rationalizations to explain Customs' policy on this issue. Even though Customs (the agency) has never articulated the significance of a trademark application pending registration in this context, the Government provides its own reasons now to justify the distinction and maintain the *status quo*.

More specifically, the Government suggests that Customs' regulatory scheme is reasonable because the USPTO trademark application process involves a "vetting" procedure that reduces the potential for consumer confusion about a product's

country of origin. This vetting issue is illusory considering that the vetting occurs only after the filing that Customs claims is sufficient. The Government also suggests that Customs' maintenance of its existing policy is reasonable because it has not changed in 25-years and JBLU's proposed remedy in this case would impose an administrative burden on the agency and therefore represents an "unworkable" approach. Customs, for its part, does not discuss these issues in its Headquarters Ruling denying JBLU's claim. Indeed, Customs has never provided a well-developed explanation of its policy on this issue.

Ultimately, this case is not about consumer confusion but instead about Customs' desire to maintain an administratively convenient dividing line between merchandise that qualifies for the less stringent marking requirements of 19 C.F.R. § 134.47 and merchandise that must comply with the more stringent marking requirements of 19 C.F.R. § 134.46. Customs' approach makes determinations about likelihood of confusion based on a technicality that causes uncertainty within the trade community and arbitrarily imposes costly re-marking procedures. JBLU maintains that its jeans are properly marked under the statute because the country of origin label is displayed in a "conspicuous" location and there is very little potential for consumer confusion.

## ARGUMENT

The country of origin marking statute provides:

> every article of foreign origin . . . imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article . . . will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article.

19 U.S.C. § 1304(a) (emphasis added). There is no dispute that the goal of the statute is to "prevent deception or mistake as to the origin of the article." *Id.* The statute gives Customs discretion to prescribe reasonable methods of marking merchandise to properly indicate the country of the origin. *Id.* Customs, in turn, promulgated 19 C.F.R. §§ 134.46 and 134.47 to address imported articles that display the name of a country or locality other than the country of origin.

Section 134.46 provides for products that must comply with the more stringent marking requirements:

> In any case in which the words "United States," or "American," the letters "U.S.A.," any variation of such words or letters, or the name of any city or location in the United States, or the name of any foreign country or locality other than the country or locality in which the article was manufactured or produced appear on an imported article or its container, and those words, letters or names may mislead or deceive the ultimate purchaser as to the actual country of origin of the article, there shall appear legibly and permanently in close proximity to such words, letters or name, and in at least a comparable size, the name of the country of origin preceded by "Made in," "Product of," or other words of similar meaning.

§ 134. 46. Alternatively, § 134.47 provides for products that display a trademark, trade name, or souvenir marking and therefore are eligible for the less stringent marking requirements:

> When as part of a trademark or trade name or as part of a souvenir marking, the name of a location in the United States or "United States" or "America" appear, the article shall be legibly, conspicuously, and permanently marked to indicate the name of the country of origin of the article preceded by "Made in," "Product of," or other similar words, in close proximity or in some other conspicuous location.

§ 134.47. In the Headquarters Ruling below, Customs explained:

> CBP has long accepted an application filed with the PTO as sufficient evidence of a trademark for purposes of 19 CFR §134.47 because the regulation does not specify what evidence is necessary to establish a trademark. If the trademark application is denied, however, the requirements of 19 CFR §134.46 may be applicable. Therefore, if an application for a trademark has been filed, CBP will allow the more lenient requirements of 19 CFR §134.47 to apply. Accordingly, in the present case, the use of trademarks with a non-origin reference to "USA," trigger the 19 CFR §134.47 requirement that the country of origin marking be in a conspicuous location.
>
> Secondly, as Protestant argues, CBP has defined this "conspicuous location" to include marking the jeans' inner waistband. Subsequent CBP rulings have found various marking locations to meet these requirements, such as trousers marked by means of a fabric label sewn inside the zipper three inches below the waistband with the words "assembled in Honduras"; a fabric label sewn into a pair of shorts 2 ½ inches from the waistband and 2 ½ inches from the zipper with the words "Made in Hong Kong"; and a heat-transferred label with the words "Assembled in Haiti" in red 5-point type two inches below the waistband. We have also stated that the marking requirements do not require the country of origin marking in one and only one specific location in order to be conspicuous within the meaning of 19 U.S.C. 1304. Prior rulings have also noted that even a fabric label sewn on the rear inner pocket of a pair of trousers directly below the rear waistband

> satisfied the requirements of T.D. 71-264(3) because the label was "prominently located on the trousers in that it can be easily seen and read upon casual examination."

HQ Ruling H137556 (June 13, 2011) (internal citations omitted).

In the HQ Ruling, Customs acknowledges that JBLU's jeans are conspicuously marked and satisfy the marking requirements under 19 U.S.C. § 1304. Customs then changes that determination for the exact same merchandise based on the filing dates of JBLU's trademark application. *See id*. Customs' analysis relies entirely on an arbitrary distinction between a pending and non-pending trademark registration application to make a determination about whether JBLU's merchandise is legally marked under § 1304.

Under this framework, the statutory purpose of preventing consumer deception is confused because Customs has implemented the statute in a manner that embraces a purely technical dividing line to make these determinations. The presence of a pending trademark serves only as a procedural formality that permits Customs to divide imported products as falling under one set of marking requirements or the other. Customs does not undertake any meaningful review of the potential for confusion. The HQ Ruling illustrates this point. *See* HQ Ruling H137556. Customs' analysis flows directly from this distinction between a pending and a non-pending trademark. There is no discussion of whether JBLU's jeans might (or might not) cause confusion by displaying the acronym "USA" as part of the

trademark. *Cf.* HQ Ruling 731707[1] (July 26, 1989), JA 095. Whether JBLU filed an application with the USPTO drives the entire analysis. This approach to reviewing merchandise for proper country of origin markings unreasonably places form over substance.

Another problem with this policy is that Customs has partially outsourced its statutory duty to evaluate country of origin markings to the USPTO. For merchandise displaying a pending trademark, Customs imposes a very reasonable marking requirement, *i.e.*, one country of origin label inside the waistband is sufficient to satisfy § 134.47. For merchandise displaying a non-pending trademark, Customs imposes a much more burdensome marking requirement, *i.e.*, must apply large country of origin labels in close proximity to every trademark displaying "USA" to satisfy § 134.46. The difference in marking requirements is significant and completely dependent on a trademark's pending status with the USPTO. This implies that the USPTO performs some sort of miracle during the application process that reduces potential confusion among consumers.

A pending trademark application, however, does not change the appearance of the mark displayed on the imported goods from one day to the next. The potential

[1] In this Ruling, the trademark applicant abandoned its registration application for "American Trouser" in 1984. Five years later, Customs concluded that the trademark "American Trouser" was not confusing under the regulation. *See* http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4801:49qt2.2.2 (last visited September 18, 2015).

for confusion or a lack thereof is the same. Customs' policy represents an overly simplistic approach to administering the country of origin marking requirements. *See Barnett v. Weinberger*, 818 F.2d 953, 964 (D.C. Cir. 1987) ("Deference to interpretative agency promulgations should not lapse into mere 'judicial inertia,' and we would neglect a fundamental responsibility were we to 'stand aside and rubber-stamp [our] affirmance of administrative decisions that [we] deem inconsistent with a statutory mandate or that frustrates the congressional policy underlying a statute.'") (quoting *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 272 (1968)).

Customs maintains this practice without explanation. Customs, though, places too much weight on a technicality that has no bearing on consumer confusion. Customs, therefore, must justify its policy as a reasonable exercise of agency discretion under the statute or credit JBLU for properly marking its merchandise under § 134.47. *See Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 48 (1983) ("*State Farm*") ("We have frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner. . . ."); *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) ("[A] fundamental requirement of administrative law is that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action. . . . At bottom, an agency must explain why it chose to do what it did . . .

And to this end, conclusory statements will not do; an agency's statement must be one of reasoning.") (internal quotations and citations omitted).

As noted, the Government attempts to provide its own explanations for Customs' interpretation and application of the regulation. For example, the Government states that "19 C.F.R. § 134.47 achieves [the purpose of the marking statute] by granting relaxed marking requirements to imported goods with marks that have been vetted by the USPTO or that are the subject of a pending application," whereas "19 C.F.R. § 134.46 imposes more stringent marking requirements on importers whose goods could mislead or deceive customers, but who have not taken steps prior to importation to legitimize the marks." Appellee Br. 12.

This language attempts to explain why a pending application or registered mark might be relevant under the statute. Customs has never offered its own explanation on this issue. Therefore, the views expressed above represent appellate counsel's *post hoc* rationalizations for Customs' administrative practice. The court cannot uphold Customs' interpretation based on these arguments. *See State Farm*, 463 U.S. at 49 ("[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (internal citation omitted).

The Government also states that "the vast number of marks that importers may informally claim as a 'trademark' under the broad common meaning of that term would render the application of 19 C.F.R. § 134.46 administratively unworkable. . . For purposes of rendering 19 C.F.R. § 134.47 administratively workable, Customs reasonably limits the inclusion of trademarks to those with USPTO applications or registrations. Otherwise, Customs would be required to investigate whether a claimed mark is actually being used as a trademark, not just for purposes of importation, but commerce generally." Appellee Br. 14.

Here, the Government attempts to justify Customs' policy as a more "workable" approach for administering the marking requirements of § 134.47. One could argue that the Government even acknowledges that Customs' adherence to this interpretation is partially motivated by a desire to limit the number of marks that Customs might be required to review. Such an interpretation might be difficult to defend if Customs is making determinations about potential consumer confusion under the statute through the application of an unreasonable policy on trademarks. Accordingly, this particular issue involves substantive legal questions, competing policy choices, and other administrative considerations that fall within the expertise of the agency itself, not the agency's litigation counsel.

Customs, for its part, has never explained why it cannot apply a more fact based approach in evaluating whether imported merchandise is eligible for the less

stringent marking requirements of § 134.47. It has never explained how a pending trademark is inherently less confusing than a non-pending (common law) trademark. The USPTO's filing requirements do not shed light on the issue. It would also be helpful for Customs to explain why merchandise displaying a trademark is subject to a registration requirement (*i.e.*, filing an application with the USPTO), while merchandise displaying a trade name is not subject to a registration requirement under the regulation. *See* 19 C.F.R. § 134.47. Unfortunately, Customs has never provided its views on these marking requirements in a manner that might permit meaningful review of this issue.

If Customs applied a straightforward review of the subject merchandise, the only reasonable conclusion is that JBLU's trademarked jeans are not likely to mislead or confuse American consumers about the product's country of origin. As noted in Appellant's opening brief, JBLU started using the "C'est Toi Jeans USA" and "CT Jeans USA" trademarks in 2005. JBLU applied for and successfully registered the trademarks in 2010 after learning of Customs' policy. Both trademarks are valid and promote JBLU's branded merchandise. The marks feature highly stylized lettering stating the name of the brand on selected areas of the jeans where one might expect to see a branded trademark. The part of the brand name that features "USA" is fully incorporated into the general design that makes up the branded mark. The country of origin label "Made in China" is easily identifiable on

the inside of the waistband, *i.e.*, in the usual location for marking jeans. *See* HQ Ruling 731707 ("[T]he country of origin marking appeared on a label attached to the inside neck of the shirt which is the usual location for marking shirts.") (citing HQ Ruling C.S.D. 88-38). It is directly in front of the label with the branded trademark and size information.

No reasonable consumer could conclude that "Cest Toi[2] Jeans" is an American made product by virtue of the branded "USA" acronym included as part of the trademark. This use of the "USA" acronym does not suggest that the merchandise is manufactured in the United States. *See id.* ("Customs determined that prominent and decorative use of the trademark 'Perry Ellis America' displayed on the outside of a T-shirt was not misleading."). It is a branding tool indicating that the particular line of clothing has been designed for the U.S. market. It is a marketing gimmick. Moreover, it is fairly well understood that the vital information (*i.e.*, size, washing instructions, country of origin, etc.) about jeans is provided on the white labels stitched to the inside of the waistband. *See id*. Anyone who owns a pair of jeans knows this.

In the HQ Ruling, Customs unequivocally states that country of origin markings on the inner waistband are sufficient under 19 U.S.C. § 1304. *See* HQ Ruling H137556. Indeed, Customs acknowledges that JBLU's jeans satisfy the

[2] The term "Cest Toi" is French. It means "It's You."

"conspicuous location" marking requirement under the statute. *See id.* This particular statement by Customs should resolve the case. It is only when Customs applies its "pending application" standard that JBLU's country of origin markings are deemed insufficient. Customs' policy effectively invalidates JBLU's legitimate trademarks and renders its country of origin markings insufficient for the sake of administrative convenience. It has no relationship to the statute.

## CONCLUSION

Accordingly, the Court of International Trade's decision sustaining Customs' unreasonable application of the country of origin marking requirements should be reversed.

Dated: September 21, 2015

Respectfully submitted,
Stein Shostak Shostak Pollack & O'Hara, LLP

/s/ Matthew R. Leviton

By: Elon A. Pollack, Esq.
Matthew R. Leviton, Esq.
Attorneys for Plaintiff-Appellant JBLU, Inc.
865 S. Figueroa Street, Suite 1388
Los Angeles, CA 90017
(213) 630-8888
E-Mail: elon@steinshostak.com
mleviton@steinshostak.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this the 21st day of September, 2015, I electronically filed the foregoing Reply Brief of Appellant JBLU, Inc. with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

Alexander J. Vanderweide
DEPARTMENT OF JUSTICE
Commercial Litigation Branch, Civil Division 346
International Trade Field Office
26 Federal Plaza
New York, New York 10278
alexander.vanderweide@usdoj.gov

***Counsel for Appellee***

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, United States Court of Appeals for the Federal Circuit, 717 Madison Place, N.W., Washington, D.C. 20439.

s/ Stephen Moore
Senior Appellate Paralegal
COUNSEL PRESS, INC.

**CERTIFICATE OF COMPLIANCE**
**With Type-Volume Limitation, Typeface Requirements, And Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   This brief contains 3,046 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: September 21, 2015

/s/ Matthew R. Leviton
By: Elon A. Pollack, Esq.
Matthew R. Leviton, Esq.